## Lawrence Cameron v. Karen Burke

[572 A.2d 1361]

No. 88-241

Present: **Allen, C.J., Gibson, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed February 2, 1990

566

*Matt Harnett,* Rutland, for Plaintiff-Appellee.

*Karen M. Burke,* pro se, Winthrop, Maine, Defendant-Appellant.

**Gibson, J.** Defendant appeals from a superior court order awarding plaintiff damages for unpaid loans, interest, and partial attorney fees. We affirm.

## I.

### A.

The underlying issue in this case is whether sums provided by plaintiff to defendant, a woman with whom plaintiff had an intimate relationship, were loans or gifts. Plaintiff and defendant first became intimate in February, 1984, while defendant

was a full-time law student at Vermont Law School. At the time, defendant was experiencing financial difficulties due to condominium payments, car payments, and education and maintenance expenses for herself and her two children, one of whom was attending college. Between March and September of 1984, plaintiff presented defendant with several checks amounting to over eight thousand dollars. Plaintiff claims that defendant agreed to repay the money upon the sale of her condominium some time after a planned move to Maine for work.

In May of 1984, defendant moved to Maine. Shortly after the demise of their relationship in October, 1984, plaintiff wrote to defendant through his attorney, requesting that defendant execute a promissory note and a mortgage on the condominium to secure the loan. Defendant responded by denying the existence of a loan agreement and refusing to execute the promissory note or mortgage. Defendant sold her condominium in June of 1985 without notifying plaintiff and without repaying the alleged loan.

### B.

On January 31, 1986, plaintiff filed a complaint seeking damages for defendant's breach of the parties' agreement. Defendant denied the existence of an oral loan agreement and asserted counterclaims sounding in abuse of process, negligent infliction of emotional distress, violation of privacy, tortious interference with business relationships, and harassment and abuse, totalling $375,000 in damages.

Trial of the case was continued twice at defendant's request. The trial date was first moved from August 14, 1987 to September 24, 1987 in order to give defendant's new counsel time to prepare the case. Two days prior to that second specially assigned trial date, defendant again moved for a continuance, citing, among other reasons, plaintiff's failure to comply with discovery, her conflicting work schedule, and her desire to further review plaintiff's deposition. The motion was granted and trial was again specially assigned for December 28, 1987.

Defendant filed several motions as the trial date drew near, three of which we discuss below. On December 9, 1987, defend-

ant moved for a continuance for the third time, stating that she was an attorney in a case set for trial in the federal district court in Maine on January 5, 1988, and that she would be heavily involved in pretrial preparations until that time. The court denied defendant's motion for a third continuance on the basis that defendant had had three months to clear her calendar in anticipation of the specially assigned trial date. Defendant also filed a December 15 motion to amend her complaint to include the Statute of Frauds as an affirmative defense. The motion was opposed by plaintiff and, apparently, never acted on by the court. On December 14, defendant's attorney moved to withdraw as counsel on the ground that his client insisted that he impeach a potential witness who was a close friend of his. The court denied the motion, suggesting that defendant herself, as a trial attorney, could examine the witness if need be.

The trial commenced on December 30, 1987 and lasted three days. Defendant failed to appear personally but was represented by her attorney. At the end of testimony on the third day of trial, the court denied a motion to admit defendant's deposition, ruling that defendant was not unavailable as a witness and, therefore, there was no hearsay exception under V.R.E. 804. The court also dismissed defendant's five counterclaims by directed verdict for lack of evidence. On February 5, 1988 the court ruled in plaintiff's favor. The judgment order was amended on March 30 to include partial attorney's fees.

On appeal, defendant contends that the trial court lacked personal jurisdiction, and that the court's findings of fact are clearly erroneous and cannot stand as a basis for its conclusions and order. Defendant also contends that the trial court abused its discretion in (1) denying her motion for a third continuance, (2) denying her counsel's motion to withdraw, (3) denying her post-trial motions, and (4) denying her motion to reopen the case. Finally, defendant challenges the court's award of partial attorney's fees.

## II.

Defendant first argues, albeit briefly, that the trial court retained no personal jurisdiction over her in the instant matter,

and that the court never addressed the issue of personal jurisdiction. We disagree. Based on its findings of fact, the court found that (1) the oral promise to repay the loans occurred in Vermont, (2) substantial portions of the oral agreement were executed in Vermont, and (3) defendant's condominium, the sale of which was to trigger defendant's duty to repay the loans, was located in Vermont. These findings are supported by the record, which plainly shows that defendant began receiving funds from plaintiff while she was still living in Vermont and that she retained ownership of her Vermont condominium long after she received all the funds advanced by plaintiff. Accordingly, the court properly exercised personal jurisdiction over defendant. See V.R.C.P. 4(e); 12 V.S.A. § 913(b); *Rollins v. Vidmar*, 147 Ariz. 494, 496–97, 711 P.2d 633, 635–36 (Ct. App. 1985) ("minimum contacts" existed to confer jurisdiction on Arizona courts where mother residing in Arizona agreed to loan money to daughter in another state from funds originating in Arizona).

## III.

Defendant next contends that the trial court's findings of fact do not address certain critical issues and, therefore, are clearly erroneous. Specifically, defendant argues that because plaintiff's complaint

> does not put the defendant on notice that plaintiff expected repayment out of the proceeds of the sale of her house, it is not properly part of the case and evidence concerning repayment from the sale of the house is immaterial, since it does not tend to prove any fact placed in issue by the pleadings.

Plaintiff's complaint alleged that defendant orally promised to repay plaintiff "upon demand." According to defendant, the failure of plaintiff to amend his complaint to include a statement that defendant agreed to repay the advances upon sale of the condominium, coupled with the failure of the court to rule on defendant's request to amend her answer to include a Statute of Frauds defense, indicates that there was no "meeting of the minds" and no basis for the suit because no demand was ever made. We disagree.

■■ As defendant states in her brief, "the purpose of the complaint is to put the defendant on fair notice of the claim against [her]." *Hodgdon v. Stockwell*, 138 Vt. 473, 474, 417 A.2d 931, 931 (1980). In *Hodgdon*, we affirmed the trial court's decision to exclude trial testimony concerning the defendant's failure to provide a fire watch, as plaintiff's complaint "repeatedly and unequivocally" alleged a claim based only on defendant's negligence in allowing a defective forklift to be used around the work place. *Id.* Unlike the plaintiff in *Hodgdon*, plaintiff here never attempted to offer evidence at trial regarding a claim not yet brought to the attention of the opposing party. The fact that the complaint did not specify when plaintiff's demand took place, or that plaintiff had agreed to forestall his demand until defendant sold her condominium, is immaterial. The complaint fully apprised defendant of the claim against her. Further, as defendant readily admits, the specifics of plaintiff's contentions regarding the demand were made available to defendant through plaintiff's deposition a full three months prior to trial.

■ Defendant's argument that the purported "switch" in "legal theories" precluded her from claiming the Statute of Frauds as an affirmative defense is not supported by the record. After the parties' break-up, plaintiff, through his attorney, asked defendant to sign a promissory note and mortgage in order to secure payment of sums previously loaned to defendant. For all practical purposes, this letter constituted a demand for payment, if not right then, at a specified future date. The fact that the payment was to coincide with the selling of defendant's condominium does not put the agreement within the ambit of the Statute of Frauds. We agree with plaintiff that the oral agreement between the parties could have been performed within a year and did not create an interest in land. See 12 V.S.A. § 181(4), (5). At the time the oral contract was made, the parties agreed that the loans would be repaid when defendant had funds available from the sale of her condominium; at that time, plaintiff held no interest in defendant's land. Cf. *Vaughan v. Tetzlaff*, 141 Vt. 150, 154, 446 A.2d 356, 358 (1982) ("The time for measuring a 'meeting of the minds' is the point of agreement, not performance."). Further, plaintiff at no time acquired

"any right, privilege, power or immunity" over defendant's land; therefore, the Statute of Frauds is inapplicable. See Restatement (Second) of Contracts § 127 (1981); cf. *Bumgarner v. Tomblin*, 63 N.C. App. 636, 640–41, 306 S.E.2d 178, 182 (1983) (Statute of Frauds did not apply since the plaintiffs sought to enforce a promise to satisfy debt payments through resale of land, not a promise to sell the land).

■ In brief, the trial court's order requiring that defendant repay sums advanced by plaintiff, plus interest accruing from the time of the sale of defendant's condominium, was supported by the record and based on a consideration of all relevant issues presented by the parties.

## IV.

Defendant contends that the trial court abused its discretion by not allowing defendant a full opportunity to present her side of the dispute.

## A.

■ Defendant first argues that the court's denial of her motion for a third continuance effectively deprived her of an opportunity to be heard. We cannot agree. At a hearing on defendant's motion, her attorney stated that defendant had to be in Portland, Maine on December 28, the day the instant case was set to be heard, to take depositions for a case that was scheduled for January 5. Defendant's employer verified this fact by telephone on the day of the hearing and by a previous affidavit. Plaintiff's counsel pointed out that the instant case had already been continued twice by defendant, that his client was prejudiced by the delays because he feared losing the cooperation of his witnesses, and that defendant had known of the December trial date since October 19 but had not requested a continuance until less than three weeks before the trial date. Citing the fact that the case had already been specially assigned three times and that defendant's conflicting trial would not begin until sometime in January, the court denied defendant's motion. A decision to deny or grant a continuance is a matter of discretion. *Kokoletsos v. Frank Babcock & Son, Inc.,*

149 Vt. 33, 35, 538 A.2d 178, 179 (1987). We see nothing in the record that indicates the court abused its discretion in this instance.

■ Defendant repeatedly states that the trial court refused to allow a continuance of even one day. Yet, the trial lasted three days and on the morning of the third day the court explicitly offered defendant the opportunity to make an appearance up until the end of the day. Throughout all of the proceedings of this case, the court made every effort to give defendant an opportunity to present her case.

### B.

Defendant next argues that the court abused its discretion when it refused to allow her attorney to withdraw because, as a result of that determination, she was denied effective assistance of counsel. On December 14, 1987, two weeks before the third specially assigned trial date, defendant's attorney moved to withdraw as counsel, citing a conflict of interest over how to handle one of plaintiff's potential witnesses. Apparently, defendant wished to impeach plaintiff's credibility by requiring the potential witness, who was plaintiff's roommate and a friend of defendant's attorney, to admit that he phoned plaintiff's employer and falsely informed him that plaintiff was sick. The court refused to allow defendant's attorney to withdraw, noting that the trial had been specially assigned well in advance, that the purported conflict was over a minor issue, and that defendant, herself a trial attorney, could cross-examine the witness herself if need be.

■ "Leave to withdraw after a case has been set for trial will be granted only for good cause shown and on such terms as the court may order." V.R.C.P. 79.1(f). The court must determine whether "good cause" exists based on the particular circumstances of each case. *Chaker v. Chaker*, 147 Vt. 548, 549–50, 520 A.2d 1005, 1006–07 (1986); see *Cartin v. Continental Homes of N.H.*, 134 Vt. 362, 365, 360 A.2d 96, 99 (1976). Based on the record before us, we conclude that the trial court did not abuse its discretion. If defendant felt that her attorney could not adequately cross-examine the potential witness concerning the

phone call, she had two weeks to prepare her own cross-examination or to find another attorney to handle that one issue. Moreover, defendant has failed to show that she was prejudiced by the court's decision. Whether the potential witness had called in sick for plaintiff was of little significance regarding the instant matter.

Defendant also argues that she did not have effective assistance of counsel because her attorney's law firm had represented plaintiff's former attorney in a malpractice action. She concedes, however, that, prior to her decision to retain her attorney, he had fully informed her of the potential conflict, but she believed he could effectively represent her anyway. Defendant never brought this alleged conflict of interest to the attention of the court prior to or during trial; accordingly, it is not a proper issue for consideration on appeal. *Morissette v. Morissette*, 143 Vt. 52, 59, 463 A.2d 1384, 1388 (1983).

## C.

Defendant next argues that the court abused its discretion when it denied (1) her motion to consider her deposition, (2) her motion for a new trial, and (3) her motion to reopen with leave to file an affidavit under seal. Regarding the motion to consider her deposition, defendant, through her attorney, originally claimed that she had depositions to take on the date of her scheduled trial in Vermont. Her attorney later stated that she had not taken depositions as she claimed she would, but that she was involved in other pretrial matters. Further, since defendant never appeared at her three-day trial, which was held open through the afternoon of the third day solely to allow her an opportunity to participate, her complaint that the court would not continue the case "even for *one* day" has little merit. Finally, defendant's second attorney conceded at a post-trial hearing that she had decided not to appear at trial. In brief, the court did not abuse its discretion when it determined that defendant had voluntarily absented herself from trial; therefore, the deposition was not admissible under the "unavailability" exception, and the court properly refused to admit it. See V.R.E. 804(a); V.R.C.P. 32(a)(3) (deponent is not unavailable if absence

is due to proponent of deposition preventing deponent from testifying); see also *King v. International Harvester Co.*, 212 Va. 78, 85, 181 S.E.2d 656, 661 (1971) (construes voluntary and unexplained absence of party as a "procured" absence).

Defendant relies on *Goshy v. Morey*, 149 Vt. 93, 539 A.2d 543 (1987), in support of her argument that the court abused its discretion by not granting her motion for a new trial. *Goshy* does not support defendant's argument. *Goshy* held that "the court deciding the Rule 60(b) motion must hold a hearing to allow oral argument and, if necessary, the taking of evidence" when there has been a dismissal by default or a nonsuit. *Id.* at 99, 539 A.2d at 547. Even assuming that the instant trial was in the nature of a nonsuit, which it clearly was not, a hearing was provided and counsel was permitted oral argument. Defendant offered little new information, and the court did not abuse its discretion when it denied the motion.

In another hearing, the court denied defendant's motion to reopen with leave to file an affidavit under seal. Defendant sought to reopen the case by offering under seal a psychiatrist's affidavit stating that at the time of the trial defendant was incapable of acting in a reasonable and balanced manner or participating rationally in decisions governing her defense. The court did not abuse its discretion when it declined to review the affidavit after consideration of the circumstances surrounding the motion. Having been filed more than ten days after judgment, the motion must be considered as one seeking relief from judgment under V.R.C.P. 60 rather than as a motion for a new trial or an amendment of judgment under V.R.C.P. 59. In light of the fact that defendant's attorney had not previously raised a claim of defendant's inability to act rationally, and that defendant had consistently asserted that her absence was the result of her involvement in complex litigation, we see no abuse of discretion on the part of the trial court in its denial of this motion. See *Reuther v. Gang*, 146 Vt. 540, 541, 507 A.2d 972, 973 (1986) (Rule 60(b) motion not subject to review absent clear showing of trial court's abuse of discretion); *In re Norris Trust*, 143 Vt. 325, 328, 465 A.2d 1385, 1387 (1983) (deliberate, calculated choices merit no relief from judgment).

## V.

Finally, defendant claims that the court's award of attorney's fees was not supported by the evidence. We disagree. Although attorney's fees are generally not awarded absent statutory authority or the parties' contractual agreement, an equity court may grant fees in exceptional cases as justice requires. *In re Gadhue*, 149 Vt. 322, 327–28, 544 A.2d 1151, 1154 (1987). Exceptional cases include instances where a litigant acts "'in bad faith'" or "'vexatiously'" and where a litigant's conduct is "unreasonably obdurate or obstinate." *Id.* at 329, 544 A.2d at 1155 (quoting *Harkeem v. Adams*, 117 N.H. 687, 690–91, 377 A.2d 617, 619 (1977)). In the instant matter, we need not address the issue of whether *In re Gadhue* can apply in nonequity cases, since, under V.R.C.P. 11, a court may impose reasonable attorney's fees on a party who makes averments in pleadings, motions, or other papers merely to harass or cause unnecessary delay.

The trial court found the instant case to be "one of the exceptional cases where an award of attorney's fees is appropriate," stating its reasons for its decision. Upon review of the record, we conclude that the court's findings are supported by the record and that the amount of the award was reasonable.

*Affirmed.*