2003 VT 35

**In re Appeal of Dennis MADORE (Department of Public Safety, Appellant)**

[825 A.2d 12]

No. 02-220

¶ 1. March 27, 2003. This is an appeal from an order of the Vermont Labor Relations Board (the Board) requiring the Department of Public Safety (the Department) to produce summaries of certain Internal Affairs Unit (IAU) records concerning allegations of misconduct by state police officers. This order was made pursuant to a motion to compel discovery made by appellee Dennis Madore, who had appealed to the Board his dismissal from the position of state police lieutenant ordered by the Commissioner of the Department. On appeal, the Department contends that the Board abused its discretion by (1) requiring production of the IAU records despite the fact that two of the four charges against appellee required dismissal if proven, which made such records irrelevant to the issue of the uniformity and consistency of discipline imposed by the Commissioner; and (2) ordering the Department to summarize IAU allegations that did not result in the imposition of discipline because the member resigned or the allegations were not sustained, proved, or admitted, as such records were similarly irrelevant to the issue of whether the Commissioner failed to impose discipline in a uniform and consistent manner. We affirm.

¶ 2. The facts in this case are not in dispute. In June of 2000, IAU obtained a copy of a Washington County Family Court decision pertaining to the divorce of appellee and Donna Madore that indicated that appellee had violated the Department's code of conduct. IAU subsequently commenced an investigation into appellee's prior conduct, focusing on numerous alleged incidents of physical and emotional abuse of his wife as well as allegations of extramarital affairs. Several persons were interviewed as part of this investigation, including Donna Madore, Judge M. Kathleen Manley (who had presided at the divorce proceedings), and appellee himself.

¶ 3. As a result of this investigation, on November 7, 2000, the Commissioner issued formal written charges alleging that appellee had committed nine violations of the Department's code of conduct. The Commissioner advised appellee that his actions violated four specific provisions of the code of conduct: Part A, Section 3.1 (Criminal Conduct — Felony), Part A, Section 14.1 (Truthfulness), Part B, Section 3.1 (Conduct Unbecoming), and Part B, Section 4.1 (Criminal Conduct — Misdemeanor); that appellee had the right to file a request for a hearing before a hearing panel; and that if he did not file such a request, the Commissioner would impose some form of discipline, including possibly discharge. On November 29, 2000, appellee presented facts and circumstances to the Commissioner that appellee believed responded to the charges and the possible discipline. On December 7, 2000, the Commissioner notified appellee of his conclusion that there were no mitigating circumstances and that he was terminating appellee's employment with the Department.

¶ 4. On January 5, 2001, appellee appealed his dismissal to the Labor Relations Board, pursuant to 20 V.S.A. § 1880(c). In that appeal, appellee asked the Board to reverse his dismissal on the ground that the Commissioner violated Article 14 of the collective bargaining agreement between the Vermont State Employees' Association and the State of Vermont for the state police bargaining unit by, inter alia, failing to apply discipline with a view toward uniformity and consistency of treatment.

¶ 5. While that appeal was pending, appellee sought from the Department certain IAU records that he believed contained evidence in support of his claim, eventually filing a motion to compel discovery. The Department filed a response to the motion, arguing, inter alia, that the Board should refrain from ruling on the motion to compel until this Court issued a ruling in the then-pending appeal of *In re Danforth*, 174 Vt. 231, 812 A.2d 845 (2002), which involved a challenge to an order of the Board compelling disclosure of IAU records in similar circumstances. Without waiting for the *Danforth* decision, the Board issued an order commanding the Department to produce the following:

> [S]ummaries of all allegations of misconduct by state police officers, and the findings as to such allegations, between January 1, 1995, and the date [appellee] was disciplined, covered by Sections 1.0, 2.0, 3.1, 8.0, 9.0 and 14.1 of Part A; and Sections 4.1 and 7.0 of Part B of the Employer's Code of Conduct.

The Department filed a subsequent motion to clarify the language of the order and to stay the order pending the resolution of the *Danforth* appeal. In a second order, the Board denied the stay and stated that the summaries should include allegations that had been made and had not been found to be established, in addition to the allegations that resulted in discipline. The Department then filed the instant appeal, pursuant to 3 V.S.A. § 1003.

¶ 6. We note at the outset that many of the issues originally raised by the parties in this appeal have been resolved by our opinion in *Danforth*. In particular, we held in *Danforth* that the Board has jurisdiction to order the disclosure of confidential IAU records, 174 Vt. at 241-42, 812 A.2d at 853-54; that the Board can compel disclosure of IAU records even in those cases where the state police advisory commission had not authorized the release of such records, *id.* at 242, 812 A.2d at 854; and that the Board did not abuse its discretion in ordering the Department to produce summaries of certain requested records relevant to the issue of the uniformity and consistency of the imposition of discipline. *Id.* at 242-43,

812 A.2d at 854-55. The only issues remaining to be addressed in the instant appeal pertain to other alleged abuses of discretion by the Board in compelling the production of the particular summaries involved in this case.

¶ 7. On review, the Board's decisions are treated with deference and are presumed to be correct and reasonable. *In re Whitney*, 168 Vt. 209, 213, 719 A.2d 875, 878 (1998). "Implicit in the authority of the Board to conduct a de novo hearing is the authority to compel disclosure and fashion its order in a manner it deems most appropriate." *Danforth*, 174 Vt. at 243, 812 A.2d at 854. A decision of the Board "will not be overturned unless it is shown to be clearly erroneous." *In re AFSCME, Local 490*, 153 Vt. 318, 321, 571 A.2d 63, 65 (1989); see also *Lamare v. N. Country Animal League*, 170 Vt. 115, 124, 743 A.2d 598, 604 (1999) ("Discovery rulings are within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse or withholding of that discretion.").

¶ 8. The Department's first argument is that the Board abused its discretion by requiring production of the summaries of the IAU records despite the fact that the Department's code of conduct requires dismissal for two of the four charges brought against appellee. If these two charges are proven, the Commissioner has to dismiss the employee and the Labor Board has to affirm that result. Thus, the Department argues that the issue of the uniformity and consistency of discipline would not be implicated for these charges and there would be no issue for which the IAU records would be relevant. In order to avoid breaching the confidentiality of the IAU records unnecessarily, the Department contends that disclosure should be ordered only if the Board rules that the two more serious charges are not proven.

¶ 9. In essence, the Department is arguing that the proceedings below should have been bifurcated, one phase to de-

termine if the charges are proved and another to determine the discipline to be imposed for those charges that are proved, with the question of the production of records only relevant to the second phase. The Department failed to move for a bifurcated hearing below and thus is making this argument for the first time on appeal. Therefore, although we recognize that many of the issues involved here were not resolved at the time of the Board's discovery order because *Danforth* had not yet been decided, we decline to address this argument of the Department here. See *In re Palmer*, 171 Vt. 464, 473, 769 A.2d 623, 629 (2000) (matters not raised or fairly presented below are not preserved for appeal). If the Department wishes to further press this argument, it should present it to the Board first, at which point the Board can adjust its discovery order to ensure that it is "sufficiently narrow in scope to maintain the privacy of Department employees while still permitting ... access to pertinent IAU records." *Danforth*, 174 Vt. at 243, 812 A.2d at 855.

¶ 10. The Department's second argument is that the Board abused its discretion by ordering the Department to summarize IAU allegations that did not result in the imposition of discipline (cases where the member resigned or the allegations were not sustained, proved, or admitted). The Department contends that such records pertain only to the statutory inability to impose any discipline and thus are irrelevant to the issue of whether the Commissioner failed to impose discipline in a uniform and consistent manner.

¶ 11. We find the records of allegations that did not result in the imposition of discipline to be relevant to appellee's claims of disparate treatment. See *Ulm v. Ford Motor Co.*, 170 Vt. 281, 290, 750 A.2d 981, 989 (2000) (evidence is relevant "if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less

probable"); V.R.E. 401. First, these records may help to demonstrate whether and how often the specific charges brought against appellee have been brought by the Commissioner in the past, and are thus relevant to the issue of whether the particular charges brought against appellee indicate that appellee has been singled out for discipline. Second, we note that some of the disciplinary standards in this appeal involve considerable discretion in their application. The records may provide examples of factual situations found to be insufficient to prove the particular charges brought against appellee, and are thus relevant to the issue of whether the facts in appellee's case are sufficient to prove the charges against him. Therefore, the Board acted within its discretion in finding these records to be relevant and in crafting a sufficiently narrow discovery order that balanced appellee's need for these records against the privacy interest of the Department's employees. See *Danforth,* 174 Vt. at 243, 812 A.2d at 855.

*Affirmed.*