2011 VT 119

Celeste PUPPOLO, Executor of the
Estate of Eva C. Puppolo v.
DONOVAN & O'CONNOR, LLC and
Chris S. Dodig

[35 A.3d 166]

No. 10-230

¶ 1. November 7, 2011. Plaintiff, Estate of Eva C. Puppolo, appeals a jury verdict in favor of defendant in this legal malpractice action. Plaintiff claims that the trial court erred in denying a motion to withdraw her counsel, that she was denied a fair trial when the court allowed defendant attorney to testify to the merits of the underlying medical malpractice action, and that the trial court improperly admitted expert testimony that exceeded the scope of the defendant's expert disclosure. We affirm.

¶ 2. On February 25, 2003, plaintiff's aunt Eva died from heart failure at the age of eighty-three while a resident at the Crescent Manor Care Center. Plaintiff arrived minutes after her death, saw Fentanyl patches on Eva, and concluded that her aunt died of an overdose of Fentanyl. According to Eva's primary care doctor, Fentanyl was prescribed to manage increasing pain from a severe pressure ulcer on Eva's back.

¶ 3. Plaintiff reported the circumstances of her aunt's death to the Bennington Police and requested that an autopsy be conducted. The Chief Medical Examiner of the State of Vermont conducted the autopsy and concluded Eva had died of natural causes. At his deposition, the medical examiner stated, "Basically she died of complications from heart disease from hardening of the arteries

and high blood pressure." After completing its investigation, the police department closed the case.

¶ 4. Plaintiff also filed a complaint related to her aunt's death with the Department of Aging and Disabilities (DAD). The DAD conducted an unannounced investigation at Crescent Manor "to determine if the facility was in violation of any [s]tate or [f]ederal regulations governing the operation of nursing homes." The investigator found no regulatory violations and concluded that, despite the fact that the facility had used methods of intervention to prevent "skin breakdown," Eva's overall medical condition made the development of pressure ulcers "unavoidable."

¶ 5. Plaintiff, unpersuaded by the results of these investigations, consulted with defendant about bringing wrongful death and survivorship claims against Crescent Manor and the attending physicians. However, in light of the autopsy report, and the conclusions of the police and DAD investigations, defendant declined to take the case. In so declining, defendant told plaintiff that the limitations period for the survival action began to accrue when she was appointed executor of the estate. Defendant concedes that this statement was incorrect and that the limitations period had actually begun to accrue two months earlier, when the original executor was appointed. Defendant also concedes that he failed to specifically notify plaintiff of the two year limitations period for the wrongful death action, which expired on February 25, 2005.

¶ 6. Plaintiff filed a complaint against Crescent Manor and the physicians through another attorney on February 6, 2006. Both claims were dismissed on summary judgment as time-barred. On Feb-

ruary 20, 2008, plaintiff brought the present legal malpractice action against defendant, claiming that her reliance on his legal advice deprived her of the opportunity to pursue wrongful death and survivorship claims for her aunt's death.

¶ 7. Shortly before jury draw in the underlying action, on December 31, 2009, plaintiff contacted her legal malpractice attorney by email and requested that he withdraw his appearance. Counsel filed his motion to withdraw on January 4, 2010, one day before the scheduled jury draw. The trial court held the jury draw and reviewed the motion the next day, although plaintiff was not in attendance. The court declined to issue a decision on the motion, however, noting that plaintiff was not present and had not received adequate notice of a potential hearing. The court then issued an entry order scheduling a hearing on the matter for January 14, 2010, the first day of trial, and mailed a copy of the order directly to plaintiff. The order read in pertinent part: "[T]he [c]ourt will set [p]laintiff's counsel's motion to withdraw at the outset of the scheduled trial on January 14, 2010. Plaintiff and counsel should be prepared to proceed with the trial in the likely event that the [c]ourt finds no good cause for either last-minute substitution of counsel, or any associated request for a continuance."[1]

¶ 8. On January 12, 2010, two days before the hearing and trial, plaintiff filed a pro se motion to recuse the trial judge.[2] Her counsel had refused to seek this

disqualification. The following day, the chief administrative judge issued an order to replace the trial judge "as a matter of judicial expediency but without a determination that [p]laintiff ha[d] established grounds for recusal." The judge noted that because it was the "eve" of trial there was not sufficient time to consider the motion, and "to add further complexity, the motion [wa]s purportedly based on an 'exhibit,' which the [court] ha[d] yet to receive."

¶ 9. Plaintiff's counsel's motion to withdraw was thus heard by the replacement judge on the first morning of trial. Plaintiff appeared and asserted dissatisfaction with then counsel on several grounds. She first complained that there had been "some major tactical disagreements" regarding an attempted mediation on November 16, 2009. The trial court did not allow plaintiff to elaborate on these "tactical disagreements," explaining that the mediation proceedings were confidential. She also complained of her attorney's choice of expert witness. While plaintiff conceded that both her preferred expert and the expert her attorney eventually hired came to the same conclusion — that her aunt had died of a Fentanyl overdose — she felt her expert was "more definitive," "not wimpy," and "very staunch in his opinion." Her attorney explained that he had made a "plurality of attempts" to contact plaintiff's preferred expert, but having received no response, retained another whom he considered "just as competent" and capable of providing "everything" he needed for expert testimony. Plaintiff took further issue with her coun-

---

[1] Plaintiff contends that the court denied the motion on January 5, but the plain language of the entry order shows the court made no dispositive decision on the motion; it merely set a date to do so.

[2] Plaintiff's counsel's motion to withdraw was still pending at the time plaintiff filed the motion to recuse, resulting in some confusion as to plaintiff's representation. We note that V.R.C.P. 79.1(f) provides

that "[w]hen an attorney has entered an appearance the attorney shall remain as counsel until the attorney has been granted leave to withdraw by the court." Because plaintiff's counsel's motion to withdraw was pending, she remained represented by counsel and her pro se motion to recuse was improper.

sel's decision not to pursue a claim that certain of her aunt's medical records had been falsified and with his failure to seek disqualification of the trial judge. Finally, plaintiff claimed that she had come to question her attorney's competence because he allegedly forgot "a very important detail" regarding the severity of her aunt's coronary artery disease.

¶ 10. The trial court denied plaintiff's counsel's motion to withdraw, explaining that "[a]fter a case is set for trial, leave to withdraw [under V.R.C.P. 79.1(f)] 'will be granted only for good cause shown.' " The court noted that "[w]hether 'good cause' exists is determined on a case-by-case basis under the particular circumstances of that case." The court reasoned that because the judge that plaintiff sought to recuse was no longer sitting on the case, the point was moot and "d[id] not go to the issue of [c]ounsel's ability to present the case." The court observed that the rest of plaintiff's arguments primarily concerned strategic disagreements, and noted that trial strategy is traditionally within the attorney's discretion. The court concluded that in making these strategy decisions the attorney acted within his discretion.

¶ 11. The court was likewise unconvinced by plaintiff's allegation that her attorney was incompetent and noted that the attorney "demonstrated a grasp of the facts and an impressive ability to recall dates and details of the case." The court concluded that "[p]laintiff failed to demonstrate good cause for allowing her attorney to withdraw at the start of a complex legal malpractice trial," and that "[t]o grant this motion and allow [p]laintiff time to obtain new counsel would unfairly burden and inconvenience [d]efendant, the jurors and the [c]ourt." After a trial, the jury found in favor of defendant. Plaintiff now appeals.

¶ 12. On appeal, plaintiff first contends that the trial court erred in denying the motion to withdraw counsel under Rule 79.1(f) because she did not have appropriate notice of the January 14, 2010 hearing. Plaintiff concedes that she received the entry order from the January 5, 2010 hearing, but complains that the entry order was "confusing" and that she did not understand that a hearing would be held on January 14. Rule 79.1(f) provides that "[n]o motion to withdraw shall be considered by the court until the party has been given notice of the motion and the date and time of hearing thereon by the clerk." The court's January 5 order read in pertinent part: "the [c]ourt will set [p]laintiff's counsel's motion to withdraw at the outset of the scheduled trial on January 14, 2010." This order unambiguously sets the date and time for the hearing on plaintiff's motion, and plaintiff concedes she received the order. Thus, the order complies with the notice requirements of Rule 79.1(f).

¶ 13. Plaintiff also claims that the January 14, 2010 hearing on the motion to withdraw failed to meet the promptness requirements implicit in Rule 79.1(f). Rule 79.1 is silent on how soon a hearing must be provided, but plaintiff argues that, because her right to have the counsel of her choice is implicated, constitutional due process must be satisfied and a hearing on a motion to withdraw must be held promptly and in a meaningful manner. Plaintiff failed to raise this issue below, and in order "to properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." *In re White*, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001) (quotation omitted). "We have repeatedly stressed that we will not address arguments not properly preserved for appeal." *Id.*; see, e.g., *Burton v. Jeremiah Beach Parker Restoration & Constr. Mgmt. Corp.*, 2010 VT 55, ¶¶ 5-6, 188 Vt. 583, 6 A.3d 38 (mem.) (declining to consider validity of a statute awarding attorney's fees because issue not properly raised

below). Plaintiff had an opportunity to raise the issue of promptness at trial but failed to do so. Therefore, we decline to address this new argument on appeal.

¶ 14. Plaintiff likewise argues that the court erred when it did not allow her to elaborate on events that took place during the mediation. According to plaintiff, she was deprived of the opportunity to explain that her attorney had an "inability to retain key details" and an "unwillingness to call a compelling expert witness" during the mediation. If it was error to preclude discussion about the substance of the mediation, any error was harmless. See V.R.C.P. 61 ("No error . . . or defect in any ruling . . . is ground for . . . modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."). Despite the trial court's ruling to the contrary on the motion to withdraw, plaintiff was in fact allowed to explain that she questioned her attorney's competence because he forgot "a very important detail" regarding her aunt's coronary artery disease. She also thoroughly discussed her concerns about her attorney's choice of expert witness. As discussed below, the trial court addressed each of her concerns in its decision and found counsel's recall of numerous details to be impressive and his choice of expert witness to be proper. In light of the fact that plaintiff expressed her concerns and the court plainly addressed them, any error in the court's ruling was harmless and does not provide grounds for reversal.

¶ 15. Finally, plaintiff contends that the court erred in concluding that there was not good cause supporting the motion request to withdraw. In doing so, she reiterates her concerns about her attorney's choice of expert witness, his refusal to pursue a falsified records claim, his competency, and his refusal to move to recuse the original trial judge. We review the trial court's ruling on a motion to withdraw for abuse of discretion. See, e.g., *Cameron v. Burke*, 153 Vt. 565, 573, 572 A.2d 1361, 1366 (1990) (reviewing trial court's denial of a motion to withdraw under abuse of discretion standard). "We will not disturb a discretionary ruling unless it is shown that such discretion was abused or entirely withheld, and the abuse of discretion resulted in prejudice to [a party's] substantial rights." *Follo v. Florindo*, 2009 VT 11, ¶ 19, 185 Vt. 390, 970 A.2d 1230 (quotations omitted). Good cause must be decided on a case-by-case basis. *Cameron*, 153 Vt. at 573, 572 A.2d at 1366.

¶ 16. Here, the trial court determined that plaintiff's attorney was capably handling her case and that the actions complained of were strategic decisions, emphasizing that trial attorneys are allowed a great deal of discretion in trial strategy decisions. The court noted that plaintiff's attorney "did not ignore [p]laintiff's request to pursue the issue of falsified medical records, but made a strategic decision that such potential embarrassment to the doctors and nurses was not necessary to successfully present [p]laintiff's case." Nor, the court explained, did the attorney "ignore [p]laintiff's request to retain a specific medical expert." Rather, he attempted to contact that expert, but did not receive a response. He therefore retained "another experienced expert whose opinion did not differ from that of [p]laintiff's preferred expert." The trial court also determined that her attorney's refusal to file a motion to recuse the original trial judge did not go to the issue of his ability to present the case.

¶ 17. We find no abuse of discretion in this ruling. As the trial court correctly stated, "[t]he decision regarding which expert, or how many experts, to retain is a classic strategy decision within the discretion of the attorney." See, e.g., *In re Dunbar*, 162 Vt. 209, 216, 647 A.2d 316, 322 (1994) (calling physician to testify as an expert witness is a strategic decision

left in the attorney's discretion). Moreover, the choices of which arguments to pursue and whether to file a motion to recuse a judge are likewise strategy decisions generally left to the attorney's discretion. See *In re E.T.*, 2008 VT 48, ¶ 11, 184 Vt. 273, 959 A.2d 544 (explaining that whether to pursue particular line of cross-examination is "tactical decision within the professional discretion of [the] attorney"); see also *United States v. Bayless*, 201 F.3d 116, 130 (2d Cir. 2000) (characterizing counsel's choice not to move for recusal as "strategic"); *Lena v. Commonwealth*, 340 N.E.2d 884, 887 (Mass. 1976) (stating that filing a motion to recuse determined by attorney's "best view of what the situation call[s] for"). A disagreement on strategy does not rise to the level of "good cause" sufficient to support a motion to withdraw. See *United States v. Goldberg*, 67 F.3d 1092, 1098-99 (3d Cir. 1995) (affirming trial court's denial of last-minute request to substitute counsel where disagreement with counsel amounted to disagreement over strategy). The trial court thoroughly examined these strategy disagreements, and its determination that counsel made reasonable decisions within the purview of his professional discretion is firmly rooted in the record. The primary conflict was over the way in which the case would be tried, and plaintiff points to little more than her disagreement with these decisions to support her motion. Indeed, when plaintiff chose to be represented by counsel, she also chose to abide by his professional judgment regarding such decisions. See *In re E.T.*, 2008 VT 48, ¶ 11 (explaining that clients must abide by their lawyers' decisions regarding cross-examination). The choices at issue were well within the discretion of plaintiff's counsel, and the trial court did not abuse its discretion in denying the motion.

¶ 18. As to the issue of competency, the trial court determined that plaintiff's attorney "demonstrated a grasp of the facts and an impressive ability to recall dates and details of the case," and that there was no evidence that an impaired "capacity to present the case" had prejudiced plaintiff. At the hearing, plaintiff conceded that her attorney "knew the law backwards and forwards" and was a "wonderful attorney" who would be an "asset" to her case. On these record facts, we conclude that the trial court did not abuse its discretion on this ground. Denial of plaintiff's motion to withdraw was therefore proper.

¶ 19. Turning to the evidentiary claims, plaintiff contends that it was plain error for the trial court to allow the defendant attorney to testify to his opinion of the merits of the underlying medical malpractice case and to discuss the autopsy and DAD reports. We do not review for plain error in the present case because plaintiff raises no claim of deprivation of a fundamental right and there is no liberty interest at stake. See *Follo*, 2009 VT 11, ¶ 16 (explaining "limited circumstances" in which Court conducts plain error review in civil cases). Plaintiff's claims are unpreserved because she elicited the testimony in question and did not move to have it struck from the record. Further, the two reports in question were admitted into evidence without objection. We therefore do not review them on appeal. See *In re Estate of Peters*, 171 Vt. 381, 390, 765 A.2d 468, 475-76 (2000) (emphasizing that failure to make a specific objection to evidence at trial precludes consideration on appeal). Similarly, plaintiff's argument that the trial court should have bifurcated the underlying medical malpractice issues from the legal malpractice claims at trial is unpreserved and unreviewable because she did not raise the concern at trial. See *In re Madore*, 2003 VT 35, ¶ 9, 175 Vt. 510, 825 A.2d 12 (mem.) (declining to hear bifurcation request for the first time on appeal).

¶ 20. Plaintiff contends that it was error for the trial court to allow a defense

expert witness to testify as to the use of Fentanyl in pressure ulcer pain management and the likelihood that Fentanyl caused Eva's death because this testimony exceeded defendant's expert disclosure statement. The trial court's discovery order read in pertinent part: "Defendant shall disclose experts by July 31, 2009. Plaintiff shall depose those experts by September 30, 2009." In response to the order, defendant disclosed to plaintiff that its expert would testify "that the care and treatment of Eva Puppolo's decubitus ulcer was reasonable and met the applicable standard of care." The expert was not deposed.

¶ 21. During trial, defendant's expert testified that the doctors and nurses who had treated Eva's ulcer satisfied the standard of care. When asked, "whether pain management [is] part of the care and treatment of a pressure ulcer," the expert responded, "emphatically yes." He then offered the opinion that, "entertaining a thought that this woman was poisoned by Fentanyl is . . . ridiculous." Plaintiff's counsel objected repeatedly to the expert's testimony on the ground that pain management and cause of death were outside the scope of defendant's expert disclosure. Counsel raised the issue again post judgment in the motion for a new trial claiming plaintiff was subjected to "trial by ambush."

¶ 22. The trial court denied the objections during the expert's testimony and later denied the motion, explaining that "it is likely that the appropriate use of Fentanyl would be a topic within the scope of the testimony on the standard of care for a bed sore — the disclosed topic of [the expert's] testimony." It further concluded that "[p]laintiff could not claim unfair surprise" because she "did not avail [herself] of discovery procedures . . . which may have helped to determine the precise boundaries of this expert testimony before trial."

¶ 23. The trial court's decision to admit or exclude expert testimony is reviewed

for abuse of discretion. *Estate of George v. Vt. League of Cities & Towns*, 2010 VT 1, ¶ 14, 187 Vt. 229, 993 A.2d 367. We will not find an abuse of discretion unless the admission of the disputed evidence was "either made for reasons clearly untenable or was unreasonable." See *USGen New Eng., Inc. v. Town of Rockingham*, 2004 VT 90, ¶ 24, 177 Vt. 193, 862 A.2d 269. We see no abuse of discretion here. The trial court is in the best position to assess the correlation between the evidence presented and the disclosure. As the trial court indicated, the use of Fentanyl for pain management squarely fits within the broad topic of "care and treatment" of Eva's ulcer. While the expert testimony relating to the cause of death fits less clearly into the disclosure, the decision to admit that testimony is also well within the discretion of the trial court. The expert's testimony did not stray so far beyond the scope of the disclosure so as to make its admission an abuse of discretion. Neither rules nor the trial court's order required the disclosure to be more specific, and plaintiff cites no authority for the contention that defendant's disclosure was inadequate. Thus, we find no abuse of discretion in the admission of this testimony.

¶ 24. Likewise, it was within the trial court's discretion to conclude that plaintiff could not claim unfair surprise in her post-trial motions. Without passing judgment on whether the trial court would or should have granted such a motion, "failure to request a continuance at the time of surprise, except under extraordinary circumstances, serves as a waiver of the party's rights." *Hartnett v. Med. Ctr. Hosp. of Vt.*, 146 Vt. 297, 301, 503 A.2d 1134, 1137 (1985) (quotation omitted). Plaintiff has not put forth any "extraordinary circumstances" warranting departure from the general rule. Plaintiff took no affirmative steps to alleviate the alleged surprise when defendant elicited the expert's testimony and did not ask the

court for a continuance, recess, or adjournment in order to depose the expert or otherwise prepare for the testimony. The trial court did not abuse its discretion in this determination.

*Affirmed.*