*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-376

MARCH TERM, 2015

In re L.W. and J.W., Juveniles } APPEALED FROM:
} 
} Superior Court, Chittenden Unit,
} Family Division
} 
} DOCKET NO. 374/375-12-12 Cnjv

Trial Judge: Alison S. Arms

In the above-entitled cause, the Clerk will enter:

Mother appeals from a judgment of the superior court, family division, terminating her parental rights to the minors L.W. and J.W. She contends that, by proceeding in her absence on the second day of the hearing, the trial court failed to safeguard her rights and ensure that the evidence was sufficient to make an informed decision in the best interests of the children. We affirm.

The trial court's findings, which are not disputed on appeal, may be summarized as follows. Mother has a long history of substance abuse and mental health issues. J.W. was born addicted to cocaine in January 2009. The following month, he was taken into custody by the Department for Children and Families and adjudicated CHINS, but was later returned to mother's custody to live with her at the home of his paternal grandparents. L.W. was born in March 2011, and required immediate treatment for addiction, as well. Although mother was then living with the children at the Lund Home, she was asked to leave for failure to meet case-plan goals. In late October 2012, mother assaulted J.W.'s paternal grandmother and was forced to move to a hotel, where staff later discovered the children unattended. DCF took custody of the children, who have since lived mainly in foster homes.

The children were adjudicated CHINS, and the court adopted a disposition plan in January 2013. The plan established a goal of reunification, and a plan of services calling for mother to engage in substance-abuse treatment and counseling, abstain from drugs and alcohol, complete an outpatient mental-health program, engage in parenting services, and maintain safe and stable housing. Thereafter, however, mother became homeless, continued to abuse drugs, failed to engage in Easter Seals Family Time services, and returned to the Lund Home, where she was again asked to leave. She routinely cancelled visits with the children. The court found that, since the fall of 2013, mother had provided no information to her social worker about engaging in mental-health counseling and treatment, had ceased engaging in services, and had seen little of the children. The State filed termination petitions in February 2014, and held a two-day hearing: on June 12 and July 10, 2014.*

---

* Father voluntarily relinquished his parental rights on the second day of the hearing.

In September 2014, the court issued a written decision granting the State's petition. Based on mother's failure to engage in services, inconsistent visitation with the children, continued untreated mental-health and substance-abuse issues, and unstable and unpredictable housing and lifestyle, the court concluded that there was no reasonable likelihood that mother could resume parental responsibilities within a reasonable period of time. She had not played a constructive role in the lives of the children, who had experienced multiple moves, upheaval, and trauma while in her care. The court noted, however, that since coming into DCF custody, the children had made positive progress, and had settled in with a foster family with whom they had bonded. Accordingly, the court concluded that termination of mother's parental rights was in the best interests of the children, and granted the petition. This appeal by mother followed.

Mother contends that the trial court erred in proceeding on the second day of the hearing without her presence. The facts underlying the claim are as follows. On the first day of the hearing in June 2014, mother was called as a witness by the State. She had concluded her direct testimony and was in the midst of cross-examination by her own attorney when the court adjourned for the day, explaining that mother could resume her testimony when the hearing reconvened. On the second day of the hearing in early July, however, mother was not present. The attorney for the State informed the court that she had recently learned from a DCF social worker that mother reported having tuberculosis. The social worker had asked mother to provide a doctor's confirmation, but mother did not respond. The State's attorney was concerned that, if true, mother's condition could pose a risk to a particular State's witness who was pregnant.

The trial court then inquired of mother's counsel as to the whereabouts of his client. Counsel responded that she was either at her doctor's or on her way to court. He stated that mother had also informed him that she had a positive skin test for tuberculosis about a week-and-a-half earlier, that this did not necessarily indicate that she was contagious, and that counsel had attempted to contact mother's doctor without success.

The trial court then observed that mother was required to provide medical documentation if she was requesting a continuance or other relief based on illness. Mother's attorney stated: "We have not requested a continuance." The court thereupon ruled that mother was absent without a legitimate excuse, and that the hearing would continue. Counsel then suggested that mother might be late because of the bus schedule, and the court responded that it had informed the parties of its intent to start on time and reiterated that it was "not hearing a request for a continuance." Counsel confirmed that he was "not requesting one." Accordingly, the hearing proceeded in mother's absence. Despite her continued absence, mother's counsel did not revisit the issue or request a continuation of the hearing at any point thereafter.

Mother contends that, by proceeding in her absence, the trial court failed to protect her constitutional rights and "overlooked its responsibility to make sure the evidence was adequate . . . to make an informed decision in the best interest of the child." The claim is unpersuasive. Mother makes no claim that, while present on the first day of the hearing, her absence from the second day was involuntary or due to illness or an inability to attend. Indeed, mother was represented by counsel throughout the proceedings, and her attorney made no claim that she was unable to attend due to illness or for other reasons, and expressly declined to request a continuance even to inquire into that possibility. See V.R.C.P. 40(d)(1) (motion for continuance may be based on claim that absence is due to illness if supported by affidavit from physician stating the disease and character of disability). In these circumstances, any claim of error based on the court's decision to proceed was clearly waived. See, e.g., Puppolo v.

Donovan & O'Connor, 2011 VT 119, ¶ 24, 191 Vt. 535 (mem.) (failure to request continuance constitutes waiver of claimed error on appeal); In re Dunkerley, 135 Vt. 260, 264 (1977) (waiver of right to be present may be inferred from voluntary nonattendance).

Furthermore, we note that mother made no request at any point in the proceeding to reopen the hearing to submit additional evidence, and proffers no additional evidence that she claims could or should have been adduced had she appeared on the second day of the hearing, following her testimony on the first day. Accordingly, we find no basis to conclude that the court's decision was prejudicial. See In re L.A., 154 Vt. 147, 157 (1990) (we will not reverse judgment absent showing of prejudice resulting from error).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice