Filed 02/28/25

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-03626

---

Bryant Lagasse et al v. Charlie Lord et al

---

## DECISION ON MOTION TO DISMISS

Bryant and Brennan Lagasse, beneficiaries and co-executors of their mother's estate, sue their mother's husband, Charlie Lord, and his daughter, Katherine Lord. They seek either to enforce an agreement their mother allegedly made with Mr. Lord or to recover funds their mother transferred to Mr. Lord on the strength of that agreement. Mr. and Ms. Lord move to dismiss the complaint. The court grants the motion in part and denies it in part.

## Background

From the Complaint, assuming as the court must the truth of the facts alleged and making all reasonable inferences in Plaintiffs' favor, the following factual narrative emerges. Nancy Lagasse married Charlie Lord in September 2019. Before they were married, they entered into a Prenuptial Agreement whereby they agreed to keep their property separate. Mr. Lord owned a condominium in Williston (the "Property"); prior to the marriage, Ms. Lagasse moved into the Property with Mr. Lord. In March 2022 Mr. Lord executed a quitclaim deed naming Ms. Lagasse and himself as tenants by the entirety. In late November 2022, Ms. Lagasse gave Mr. Lord a check in the amount of $100,000 with the word "Home" written on the memo line. Ms. Lagasse died a month later and Plaintiffs were appointed co-executors of her estate. Plaintiffs learned of the check after their mother's death. They asked Mr. Lord about this money, and he told them that Ms. Lagasse had given it to him in exchange for his agreement to give Plaintiffs half of the proceeds from the sale of the Property. Mr. Lord stated that he planned to sell the Property and split the proceeds with Plaintiffs.

Plaintiffs informed Ms. Lord about their conversation with her father, and Ms. Lord responded that she understood the $100,000 had been a gift from Ms. Lagasse to her father. In later conversations, Mr. Lord admitted to Plaintiffs that Ms. Lagasse had written him the check so that he would give half of the Property's proceeds to Plaintiffs upon its sale. During the same call, however, Mr. Lord told Plaintiffs that after speaking with his daughter, he understood that Ms. Lagasse had actually given him the check as a gift. Plaintiffs assert, upon information and belief, that Ms. Lord directed her father to

Decision on Motion to Dismiss
24-CV-03626 Bryant Lagasse et al v. Charlie Lord et al
Page **1** of **5**

deny that he had agreed to share the proceeds of the Property's sale with Plaintiffs and, instead, to refer to the check as a gift. Plaintiffs further assert, upon information and belief, that Mr. Lord later sold the Property, which was unencumbered, for approximately $600,000. Mr. Lord has not shared any of the proceeds of the sale with Plaintiffs.

**Analysis**

Plaintiffs assert three causes of action against Mr. Lord: (1) breach of the contract to transfer half of the Property's proceeds to Plaintiffs in exchange for the $100,000 check, (2) unjust enrichment, and (3) breach of the Prenuptial Agreement. Against Ms. Lord they assert tortious interference with prospective economic advantage. The court addresses each claim in turn.

Before doing so, however, it is necessary first to debunk the initial salvo in Defendants' motion. Defendants open by asserting that the Prenuptial Agreement bars all of Plaintiffs' claims. This argument, however, relies on a tortured reading of the Agreement. While acknowledging that the Agreement reserves to each party "the right to transfer or convey any asset to the other Party during his or her lifetime," Defendants posit that the Agreement requires that any such transfer, to be effective, must be in writing. Nothing in the Agreement supports such a construction. Contrary to Defendants' suggestion, a subsequent transfer is neither a "right or claim arising out of the marriage" nor an amendment to the Agreement; if it were, then Ms. Lagasse's transfer of $100,000 to Mr. Lord and his acceptance would be invalid, unless supported by a written agreement. In short, the Agreement is silent on the manner in which subsequent transfers may be effected.

### 1. *Breach of Contract*

Turning to the contract claim, Defendants argue that the statute of frauds precludes the claim. The statute of frauds requires that contracts "for the sale of lands, tenements, or hereditaments, or of an interest in or concerning them" be in writing. 12 V.S.A. § 181(5). The claim here, however, is not one for an interest in the Property; indeed, the claim became choate only upon the sale of the Property. The promise to pay a debt from proceeds of a sale of real property does not create an interest in the land itself. *See Cameron v. Burke*, 153 Vt. 565, 571–72 (1990); *accord Quimby v. Schaufus*, No. 2001-528, 2002 WL 34423176, at *1 (Vt. June 1, 2002) (unpub. mem.) (statute of frauds does not apply to promise to repay investment in property from sale of property). Thus, the contract Plaintiffs seek to enforce is not precluded by the statute of frauds.

### 2. *Unjust Enrichment*

Defendants' argument against the unjust enrichment claim fares no better. To state a claim for unjust enrichment, Plaintiffs must allege that " '(1) a benefit was conferred on defendant; (2) defendant

accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value.' " *Reed v. Zurn*, 2010 VT 14, ¶ 11, 187 Vt. 613 (quoting <u>Center v. Mad River Corp., 151 Vt. 408, 412 (1989)</u>). Plaintiffs assert each of these elements. They assert that Ms. Lagasse gave Mr. Lord $100,000 in exchange for his agreement that he would share the proceeds from the sale of the Property with her sons, and that he then welched on that agreement. In response, Defendants suggest an equitable equivalency between Mr. Lord's earlier conveyance of an interest in the Property and Ms. Lagasse's subsequent transfer of $100,000. This suggestion, however, conveniently overlooks the allegation that there was an express *quid pro quo*, completely independent of the transfer of an interest in the property. Proof of that allegation, of course, is a question of fact. *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 68, 218 Vt. 144. For present purposes, it suffices to observe that Plaintiffs' allegations amply state a claim.

3. *Tortious Interference with Prospective Economic Advantage*

Plaintiffs next assert a claim of tortious interference against Ms. Lord—in both their individual and representative capacities. Defendants respond that Plaintiffs' individual claims, in the nature of third-party beneficiary claims, are too attenuated to state a claim. As to the representative claim, Defendants argue that the claim fails because it alleges no business relationship. Each of these arguments misses the mark.

To prevail on a claim for tortious interference with a prospective economic advantage, a claimant must show: " '(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of interference on the part of the interferer; (4) damage to the party whose relationship or expectancy was disrupted; and (5) proof that the interference caused the harm sustained.' " *Skaskiw v. Vt. Agency of Agric.*, 2014 VT 133, ¶ 24, 198 Vt. 187 (quoting *J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66, ¶ 21, 188 Vt. 245). Clearly, then, Plaintiffs need not allege a "business relationship," as long as they have sufficiently alleged an "expectancy." "Expectancy" is defined as "[t]he mere hope or probability of inheriting; specif., possibility that an heir apparent, an heir presumptive, or a presumptive next of kin will acquire property by devolution on intestacy, or the possibility that a presumptive beneficiary will acquire property by will." Black's Law Dictionary, expectancy (12th ed. 2024). Plaintiffs have alleged such a hope or possibility.

The Restatement (Second) of Torts has expressly recognized the applicability of the doctrine of tortious interference in this context: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have

received is subject to liability to the other for loss of the inheritance or gift." Restatement (Second) of Torts § 774B. The Reporter's Note to this section recognizes that "[a] substantial majority of the cases now grant recovery in tort for intentionally and tortiously interfering with the expectation of an inheritance or gift." *See, e.g., Solon v. Slater*, 287 A.3d 574, 592 (Conn. 2023) (court assumed without deciding that Connecticut would recognize viability of tortious interference with right of inheritance); *Allen v. Leybourne*, 190 So.2d 825, 829 (Fla. Dist. Ct. App. 1966) (claim for tortious interference with expectancy recognized where decedent had intention to make bequest that would have been carried out but for wrongful acts of defendant); *Harmon v. Harmon*, 404 A.2d 1020, 1022 (Me. 1979) (son has cause of action against defendant for wrongfully interfering with expectancy of bequest under will); *Sacks v. Dissinger*, 178 N.E.3d 388, 395 (Mass. 2021) (Massachusetts has " 'long recognized a cause of action for tortious interference with the expectancy of receiving a gift[, including an inheritance][.]' ") (quoting *Labonte v. Giordano*, 687 N.E.2d 1253, 1255 (Mass. 1997)). This court is confident in the prediction that the Vermont Supreme Court would follow this trend. Even were it not, the teachings of *Association of Haystack Property Owners, Inc. v. Sprague* would counsel against dismissal of Plaintiffs' expectancy claims. 145 Vt. 443, 447 (1985) ("courts should be especially reluctant to dismiss on the basis of pleadings when the asserted theory of liability is novel or extreme").

The same teachings counsel against dismissing Plaintiffs' claims as third-party beneficiaries of the alleged agreement between their mother and Mr. Lord. The Restatement (Second) of Torts recognizes the right of third-party beneficiaries to sue one who interferes with performance of a contract entered for their benefit. *See* Restatement (Second) of Torts § 766, cmt. p; *see also Tamposi Assocs., Inc. v. Star Market Co.*, 406 A.2d 132, 134 (N.H. 1979) ("A third-party beneficiary may recover from one who intentionally interferes with the contract that established the third party's rights."); *Willard v. Claborn*, 419 S.W.2d 168, 169–170 (Tenn. 1967) (intended third-party beneficiary has standing to sue for intentional interference with contractual relationship). While Defendants may be correct in their assertion that our Court has not explicitly allowed third-party beneficiaries to pursue this theory of recovery, neither has it rejected the theory. Here again, the court need not go so far as to predict that the Court would follow the trend identified in the Restatement; it need only observe that the theory has sufficient plausibility to bring it within the ambit of the *Association of Haystack Property Owners* case. In short, in both their individual and representative capacities, Plaintiffs have sufficiently pleaded a claim for tortious interference.

### 4. *Breach of Prenuptial Agreement*

Finally, in their capacities as co-executors, Plaintiffs assert a breach of the Prenuptial Agreement. The theory of this claim, frankly, is convoluted. The foundational premise is that the Agreement required the parties "to keep their separate property separate both during their lives and after their deaths." Compl., ¶ 85. Plaintiffs allege that Mr. Lord violated this requirement "by accepting from [Ms. Lagasse] a check for $100,000 in exchange for distributing proceeds from the house sale to the Plaintiffs and retaining the house sale proceeds rather than distributing that money to her sons[.]" *Id.*, ¶ 87.

As Defendants properly note, the answer to this theory is simple and obvious. Paragraph 7 of the Agreement expressly allows Ms. Lagasse and Mr. Lord "to transfer or convey any asset to the other Party during his or her lifetime[.]" Plaintiffs' foundational premise therefore fails, and with it, their claim for breach of the Agreement.

### Conclusion

The court grants Defendants' motion to dismiss the claim for breach of the Prenuptial Agreement, but it denies the motion to dismiss any of the other claims. Defendants shall file an Answer to Counts I–III of the Complaint within fourteen days of this Order.

Electronically signed pursuant to V.R.E.F. 9(d): 2/28/2025 12:48 PM

_____
Samuel Hoar, Jr.
Superior Court Judge