### State of Vermont v. Raymond H. Vincent

[591 A.2d 65]

No. 90-034

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed March 29, 1991

*Robert M. Butterfield*, Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Kenneth Schatz*, Acting Defender General, and *Kerry DeWolfe*, Appellate Attorney, Montpelier, for Defendant-Appellant.

*Alexander Scherr*, Vermont Legal Aid, Inc., St. Johnsbury, for amicus curiae Umbrella, Inc.

*David J. Mullett* of *Cheney, Brock & Saudek, P.C.*, Montpelier, for amicus curiae Vermont Network Against Domestic Violence and Sexual Assault.

**Morse, J.** Defendant was convicted by a jury of sexual assault, burglary, and carrying a weapon while committing a crime. He appeals the denial of his pretrial motion to compel discovery from a rape crisis worker. He also appeals the denial of his motion for acquittal on the ground that there was insufficient evidence of intent to convict him of burglary and claims the court committed plain error by failing to force the State to elect between separate episodes of sexual assault. Finally, he claims that the information charging him with sexual assault is insufficient because it does not allege specific unlawful conduct. We affirm.

The charges arose out of an incident in which defendant entered his estranged wife's home at approximately 1:30 a.m. Awakened by defendant standing in the hallway adjacent to her bedroom with a knife in his hand, she asked what he was doing; he replied that he was going to kill her. Defendant then entered her bedroom, locked the door, and pinned her to the bed. She screamed and struggled. Defendant pushed her head down on the bed with such force her nose bled and cut her hand with the knife. He repeated that he intended to kill her and ordered her to remove her clothes, indicating he was going to have sex with her. Defendant then forced her to submit to intercourse.

Afterwards, defendant told his wife his "plans" for her—that he had a girl friend who was going to move in and be the mother of their children while she worked. He also told her he would come and go and force her to have sex with him whenever he pleased. Throughout his conversation, defendant waved the knife in front of her face, up and down her body, and tapped the knife's edge against her breast. He told her he was going to cut her and watch her bleed to death before he left.

Defendant then forced his wife downstairs where he made her wash the blood from her face. He sexually assaulted her again and repeated his plans for her. Defendant kept the knife in his grasp or within reach at all times. He left the home near daybreak.

The victim called the Vermont State Police, who took her to a nearby hospital. A rape crisis worker from Umbrella, Inc., con-

tacted by the police officers as part of their standard procedure, was present during the examination procedures.

## I.

Defendant argues that the trial court erred in denying his request to compel disclosure of the rape crisis worker's name. Before the trial court, the State urged the creation of a qualified or an absolute privilege to protect the identity of rape crisis workers. On appeal, amicus counsel for Umbrella and for Vermont Network Against Domestic Violence and Sexual Assault joined in arguing in favor of the privilege. We need not and do not reach that issue here, however, because in denying defendant's motion, the court did not create a privilege, and we find it was unnecessary for it to do so to reach its decision. Instead, we affirm its decision to deny disclosure of the worker's name on a more narrow ground, as an appropriate exercise of the court's general discretion in supervising discovery. V.R.Cr.P. 16.2(d).

Defendant sought by motion an order compelling the State to produce the rape crisis worker who attended the victim after the alleged sexual assault. He offered no specific reason for this request. Rather, he stated that the worker had been for a time alone with the victim, and that he sought "to be able to determine any information that would be helpful in [his] defense."

At the show cause hearing on defendant's motion, Umbrella's executive director testified that the organization sought to keep its workers' identities confidential in order to protect them from possible harassment or even violent reprisal by the alleged assaulters. She stated that crisis workers are volunteers, who feel that they do not enjoy the same degree of protection as state employees—law enforcement officers, social workers, or court staff—who come into professional contact with assaulters. She asserted that, without the protection of confidentiality, Umbrella would have difficulty in recruiting and keeping its lay volunteers. Finally, she stated that the crisis worker's role is to support victims with their immediate needs, not to investigate the truth of their allegations, and that their relationships with victims would be impaired if their communications were not confidential. Defendant offered no evidence in support of the motion and relied solely on his discovery rights set forth in V.R.Cr.P. 16.

The court denied defendant's motion, acknowledging that rape crisis intervention would be undercut if workers' identities were disclosed and finding that defendant had failed to make "some showing that there is some specific reason why this particular [worker's] name should be revealed." The court characterized defendant's request as a "fishing expedition," but stated it would reconsider the request if, after deposing other witnesses, defendant could show need.

Later, defendant refiled his motion, broadly asserting that the "rape crisis worker may have information relevant to [the victim's] credibility and necessary to effective cross-examination of [the victim]." The court again denied the request on basically the same grounds, stating, "Any person who has ever contacted the victim 'may have information relevant to' her credibility. Necessity not shown." The issue was raised again before the trial court, which denied the motion, stating there were no new fact issues requiring reconsideration of the court's prior rulings.

■ At the outset, we note that the Umbrella worker was not a person the State intended to call as a witness at trial; defendant did not even establish that the State knew the worker's identity. Under these circumstances, V.R.Cr.P. 16(a)(1), which provides that the prosecutor has an obligation to "[d]isclose to defendant's attorney as soon as possible the names and addresses of all witnesses then known to him," does not apply.

Furthermore, when cross-examining the Umbrella representative at the motion hearing, defense counsel did not even ask her the worker's name. Consequently, we doubt that defendant took sufficient procedural steps to place the disclosure issue squarely before the trial court.

■ In any event, the trial court properly exercised its discretion by not assisting defendant to discover the identity of the rape crisis worker. V.R.Cr.P. 16.2(d) provides:

> Upon a showing of cause, the court may at any time order that specified disclosures be denied, restricted, or deferred, or make such other order as is appropriate . . . .

Trial courts have broad discretion in controlling discovery and may take into account "intimidation of or harm to witnesses" or the protection of nonparties "whose rights or interests are in-

vaded by a proposed disclosure." Reporter's Notes to V.R.Cr.P. 16.2, at 105–06.

■ We are mindful that protective orders are to be "carefully drawn to allow the maximum disclosure consistent with the interest sought to be protected." *Id.* at 106. Defendant, however, presented no alternative to the court except production of the worker for a deposition. The defense showed no particular need to discover what the worker had to say other than that the worker might be able to cast doubt on the victim's credibility. The worker was not a witness to the alleged crime, and other witnesses known to defendant were also in the victim's presence after the ordeal. No indication was forthcoming that the worker might be privy to exculpatory information or any information not also known to others.

## II.

■■ Defendant argues that evidence at trial showed two discrete episodes of sexual assault and that it was plain error for the court to fail to require the State to elect between them. No error was made. An election is not required where acts are so closely related in time and circumstances as to constitute one continuous felonious transaction. *State v. Bailey,* 144 Vt. 86, 98, 475 A.2d 1045, 1052 (1984). This was such a case.

## III.

■ Defendant's contention that the information did not adequately charge him with sexual assault because it describes no specific sexual act is also without merit. Here the information tracking the statutory language, together with the accompanying affidavits of probable cause, reasonably indicated the exact offense charged and enabled defendant to make intelligent preparation for his defense. *State v. Phillips,* 142 Vt. 283, 288, 455 A.2d 325, 328 (1982).

## IV.

■ Finally, defendant contends that the court erred in denying his motion for judgment of acquittal on the burglary charge on the ground that there was no evidence that he entered the victim's residence with the intent to commit sexual assault.

Rather, he argues his repeated statements to the victim that he was going to kill her establish that his intent upon entering her home was murder, not sexual assault. Noting the cheek of this claim, we need only say that nothing in the law supposes that a defendant must have but one purpose for a burglary. Although his words may have forecast a murder, defendant's actions demonstrated another purpose.

*Affirmed.*