NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 21

No. 2021-089

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Kory L. George | March Term, 2022 |

Alison S. Arms, J.

Sarah F. George, Chittenden County State's Attorney, and Andrew Gilbertson, Deputy State's
  Attorney, Burlington, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Seibert, Appellate Defender, Montpelier, for
  Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Waples, Supr. J.,
         Specially Assigned


¶ 1.    **EATON, J.**  Defendant Kory George appeals the criminal division's denial of his request for a protective order preventing disclosure of testimony he provided to prosecuting authorities pursuant to a proffer agreement. We reverse and remand to the criminal division.[1]

---

[1] The sole issue in this case is whether the State may disclose the substance of the proffer. As such, if any documents or arguments containing the proffer were public, the substance of the proffer would be publicly disclosed, undermining the very question before this Court. Considering this unique circumstance, we granted the parties' motion to file their appellate briefs confidentially and subsequently closed oral argument to the public. To reach our conclusion, we need not rely on and therefore need not disclose the contents of the proffer bar specific excerpts of the proffer transcripts containing conversations unrelated to the events surrounding the crimes charged. Reference to defendant's statements regarding the crimes charged is limited to that which has already been revealed in the trial court's public order, which defense counsel assured at oral

¶ 2. The undisputed background of this interlocutory appeal is as follows. David Auclair, defendant's stepfather, was killed by multiple gunshots in July 2019. Following an investigation, defendant was charged in November 2019 with first degree murder, burglary into an occupied dwelling, and obstruction of justice. In December 2019, defendant's mother and David Auclair's wife, Angela Auclair, was charged with aiding in the commission of murder and obstruction of justice. The State claims defendant and Ms. Auclair participated in a burglary resulting in the theft of a gun, which defendant subsequently used in the murder of David Auclair. In the aftermath, defendant and Ms. Auclair each allegedly instructed witnesses to lie to law enforcement.

¶ 3. Approximately a year after being charged, defendant agreed to waive his Fifth Amendment rights and provide the State's Attorney's office with information concerning the charges in a proffer session. Proffer sessions are often used to facilitate plea negotiations; however, a proffer session "carries with it both potential risks and potential rewards" for a defendant. United States v. Melvin, 730 F.3d 29, 32 (1st Cir. 2013). To protect against the potential risks should plea negotiations fail, a defendant and the State will often enter into a proffer agreement that controls the ways the State can use the information obtained during the proffer session. United States v. Lopez, 219 F.3d 343, 345 n.1 (4th Cir. 2000). Before he participated in an interview, defendant entered into one such written proffer agreement with the State. That

---

argument does not moot the concerns defendant raises in this appeal. Accordingly, this opinion does not implicate the concerns raised with briefing and oral argument and shall be public. Consistent with the decision herein, the Court will issue entry order(s) regarding the public-access status of the parties' appellate briefs and the recording of oral argument. The Court may further change the public-access status of the briefs and the recording of oral argument based on the criminal division's determinations on remand.

agreement, drafted by the State and signed by the State's Attorney, defendant, and defendant's counsel,[2] provides in relevant part as follows.

¶ 4.     To open, the agreement states: "This letter will state the terms upon which this office will accept proffer of information from your client, Kory George."  It then explains that the scope of the proffer interview will be limited to events surrounding the three charges brought against defendant.  In it, the government promises "not to use any information [defendant] provides pursuant to this agreement directly against him in any criminal prosecution."  In the next paragraph, it clarifies that "[a]ny leads or information derived from the information [defendant] provides, however, can be used against him in any future proceeding."  The agreement also allows the government to use the information directly against defendant in a criminal prosecution in three situations: (1) to impeach defendant; (2) to rebut evidence defendant presents; and (3) in a prosecution for obstruction of justice, perjury, or false report to a police officer.

¶ 5.     Defendant participated in interviews over the course of three days in December 2020.  During that time, the prosecuting attorney, defendant, and defendant's counsel discussed the proffer agreement and the provision of any of defendant's proffer statements to Ms. Auclair.

¶ 6.     Defendant explained that his first question for his attorney was whether Ms. Auclair would hear about the proffer and recalled that he was told it would not "be disclosed at this time." Defense counsel reiterated "at this time."  At another point the same day, the prosecuting attorney raised the issue of disclosure, mentioning that defense counsel told defendant that "this proffer was confidential at this time."  The prosecuting attorney explained that there may be an investigation in an effort to corroborate defendant's statements, which could alert Ms. Auclair's attorney to the proffer agreement and contents of the interview.  She followed up that it was not the State's

---

[2]    In addition to the Chittenden County State's Attorney's Office, the United States Attorney's Office was a signatory to the proffer agreement but is not involved in this appeal.

intention to disclose the proffer. In response, defense counsel thanked the prosecuting attorney for clarifying that the proffer "at this stage, is part of negotiations" and that Ms. Auclair's attorney would not "be apprised . . . at this point." Defense counsel then stated that she had told defendant that "if and when any settlement . . . is reached in the form of a formal resolution of [defendant's] charges," the proffer will be disclosed to Ms. Auclair's attorney.

¶ 7. Following completion of the proffer session, the State elected not to make a plea offer to defendant and indicated that it intended to provide the contents of the proffer to Ms. Auclair. As a result, defendant filed for a protective order under Vermont Rule of Criminal Procedure 16.2(d), raising various arguments including: the proffer was made during the course of plea negotiations and is therefore not admissible against him except as provided in it; his statements are not discoverable in Ms. Auclair's case because they are not exculpatory to Ms. Auclair and do not contain impeachment evidence; disclosure would be improper because defendant is not a witness for the State and therefore his statements are not necessary for the preparation of Ms. Auclair's defense; and if the proffer were disclosed, Ms. Auclair—and her associates—would pose a danger to defendant and his wife. Defendant did not argue initially that any statements made during the proffer sessions modified the proffer agreement to prevent disclosure. The State opposed defendant's request for a protective order, arguing it was required to disclose the proffer statements to Ms. Auclair under its discovery obligations. It also raised, for the first time, that it might seek to try defendant and Ms. Auclair jointly. Pending resolution of the motion for a protective order, the State informed Ms. Auclair's attorney of the existence of a proffer agreement but did not disclose the contents of the proffer.

¶ 8. After an in-camera review of the transcript of the proffer sessions and without holding a hearing, the criminal division denied defendant's motion for a protective order. It noted that the proffer statements provided details which Ms. Auclair could use to question the State's narrative and theory of her overall involvement in the murder of her husband and that defendant's

4

statements significantly implicated Ms. Auclair. The court's basis for denying the protective order request was its conclusion that Ms. Auclair is entitled to discover the contents of the proffer in her case under Vermont Rules of Criminal Procedure 16(a) and 16.2(b). The court did not address any of defendant's arguments raised in support of the protective order but noted the motion for joinder, if filed and granted, would provide another basis for disclosure of the proffer statements to Ms. Auclair.

¶ 9. Defendant immediately filed, and the trial court granted, a motion to stay enforcement of the denial of the protective order to give him time to seek an interlocutory appeal before the contents of the proffer were disclosed. Defendant then filed a motion for reconsideration that reiterated prior arguments and more clearly articulated that the proffer agreement prohibits disclosure. Defendant raised in his statement of facts—but not in his argument that the proffer agreement prohibits disclosure—that he did not believe the State would disclose the contents of the proffer session when he signed the proffer agreement. Further, he indicated that he relied on the State's intention to try him separately from his mother at the time he entered the proffer agreement.

¶ 10. Again, without a hearing, the criminal division denied defendant's request for a protective order. It relied primarily upon its view that the proffer statements were required to be disclosed to Ms. Auclair and stated without further elucidation that none of defendant's assertions supported a protective order. The court did not address defendant's contention that the proffer agreement prevented disclosure of the statements or that defendant's safety concerns for himself and his wife necessitated a protective order. The court then granted defendant permission for an interlocutory appeal and stayed enforcement of its order denying the protective order pending the appeal's resolution. This appeal followed.

¶ 11. On appeal, defendant argues that the criminal division abused its discretion when it declined to grant defendant's motion for a protective order for various reasons: the proffer

agreement prohibits disclosure; disclosure is not required in Ms. Auclair's case under the discovery rules or constitutional principles; the criminal division failed to consider the risk of physical harm disclosure poses to defendant or his wife; and the criminal division failed to consider the argument that the contents of the proffer are inadmissible and thus not subject to disclosure. The State argues that the court did not abuse its discretion in denying the protective order because: it did not have the authority to grant defendant a protective order; the proffer agreement does not prohibit disclosure; the State is required to disclose the contents of the proffer to Ms. Auclair; and defendant is not prejudiced by the denial because he cannot prove disclosure would actually pose a threat to him or his wife.

¶ 12.    At the threshold of our inquiry, we clarify that the issues addressed in this opinion are limited to those properly reviewed in this interlocutory appeal. We do not address admissibility of the contents of the proffer in either defendant's or Ms. Auclair's case. See State v. Karcz, 134 Vt. 187, 188, 352 A.2d 687, 688 (1976) (per curiam) (explaining that generally "questions addressed to the admission or exclusion of evidence are neither suitable nor amenable to interlocutory appeal"). The question presented requires us to analyze whether the trial court abused or failed to exercise its discretion when it declined to issue a protective order in defendant's case to prohibit public disclosure of certain information. Therefore, we also do not review whether the contents of the proffer may eventually be discovered in Ms. Auclair's case. See United States v. Bulger, 283 F.R.D. 46, 51 (D. Mass. 2012) (explaining that where defendant seeks access to discovery materials subject to protective order, same rules and concepts guide modification or removal of protective order). The propriety of a joint trial is not before us as the trial court has not yet ruled on the State's motion, and accordingly we do not consider propositions that rely on the hypothetical grant or denial of a joint trial below. See State v. M.W., 2012 VT 66, ¶ 12, 192 Vt. 198, 57 A.3d 696 (stating that hypothetical questions lack substantial controversy and are therefore unripe for review). Lastly, although the State argues that the trial court did not have the authority

6

to issue a protective order under Rule 16.2(d), it conceded at oral argument that this assertion was not raised below. This argument is therefore not preserved for appeal. See State v. Wood, 143 Vt. 408, 412, 465 A.2d 1372, 1374 (1983).

¶ 13. When we look past unripe issues, two of defendant's grounds for this protective order remain: breach of the proffer agreement's terms and safety risk to defendant and his wife. We first address whether the proffer agreement prohibits disclosure and conclude that it does not. Because interpretation of the proffer agreement is a pure question of law, we can conclusively determine that defendant is not entitled to a protective order on this basis even though the criminal division did not consider this argument below. We then turn to defendant's argument that disclosure would create a safety risk to him and his wife. We conclude that the trial court never exercised its discretion with respect to this ground for a protective order. Because the existence of a safety concern is a question of fact, we are unable to determine whether defendant is entitled to a protective order on this basis on appeal and therefore reverse and remand for the trial court to consider this argument in the first instance.

¶ 14. Under Vermont Rule of Criminal Procedure 16.2(d), "[u]pon a showing of cause, the court may at any time order that specified disclosures be denied, restricted, or deferred, or make such other order as appropriate." The protective order in this case seeks to prevent the parties from publicly disclosing certain information in the case. See Alderman v. United States, 394 U.S. 165, 185 (1969) (citing federal protective order rule and stating that trial courts should, where appropriate, issue "enforceable orders against unwarranted disclosure of materials which [parties] may be entitled to inspect"); see also State v. Oscarson, 2006 VT 30, ¶ 11, 179 Vt. 442, 989 A.2d 123 (explaining that we may consult similar federal rules); Reporter's Notes, V.R.Cr.P. 16.2 (stating that Vermont's protective order rule is similar to federal counterpart). A protective order is different from an order to seal. Like materials obtained pursuant to a discovery order, a proffer is generally not automatically a part of the public court record. In re Owens, 843 F. App'x 677,

7

679 (6th Cir. 2021); see V.R.P.A.C.R. 6(b)(16) (exempting records produced in discovery from public access rules "unless used at trial or in connection with a request for action by the court"). The transcript of the proffer session was introduced in-camera for the sole purpose of determining whether cause to issue a protective order existed and is not part of the public record below. See V.R.P.A.C.R. 6(b)(18) (exempting evidence introduced in closed proceeding from public access rules). While sealing could prevent public access to a document in the record, a protective order seeking confidentiality serves a different function: to prohibit dissemination of certain information to the public. See Pub. Citizen v. Liggett Grp., Inc., 858 F.2d 775, 780 (6th Cir. 1988) (explaining that, absent protective order, parties may disseminate discovered information as they see fit).

¶ 15.    Generally, to show cause for a protective order requiring confidentiality, a movant must establish with specificity that "disclosure will work a clearly defined and serious injury to the party seeking closure." United States v. Wecht, 484 F.3d 194, 211 (3d Cir. 2007) (quotation omitted). A variety of grounds may satisfy this standard, including where disclosure would violate someone's constitutional rights or certain privileges, result in intimidation or harm to witnesses, thwart an ongoing investigation, or lead to unnecessary expense. Reporter's Notes, V.R.Cr.P. 16.2. However, any cause determination "must also balance the public's interest in the information against the injuries that disclosure would cause." Wecht, 484 F.3d at 211; see also generally United States v. Smith, 985 F. Supp. 2d 506 (S.D.N.Y. 2013) (discussing right of public access to criminal discovery materials in context of protective order). It is for this reason that protective orders should "be carefully drawn to allow maximum disclosure consistent with the interest sought to be protected." State v. Vincent, 156 Vt. 259, 264, 591 A.2d 65, 68 (1991) (quoting Reporter's Notes, V.R.Cr.P. 16.2). The party seeking a protective order has the burden of showing cause.[3]

_____

[3] Because the movant carries the burden of demonstrating cause for a protective order, a trial court is not obliged to consider potential grounds not raised.

Wecht, 484 F.3d at 211. We review the trial court's denial of a motion for a protective order for abuse of discretion. Vincent, 156 Vt. at 263, 591 A.2d at 68.

¶ 16. We turn first to defendant's argument that a protective order is required because the proffer agreement prohibits the State from disclosing the proffer to Ms. Auclair. Proffer agreements are a form of contract and are interpreted according to contract law. Melvin, 730 F.3d at 37; see also State v. Tavis, 2009 VT 63, ¶ 9, 186 Vt. 554, 978 A.2d 465 (mem.) ("We construe boilerplate state forms like contracts."). Because a proffer agreement involves a defendant relinquishing fundamental constitutional rights, the government must be held "to the literal terms of the agreement, as well as the most meticulous standards of both promise and performance to ensure the integrity of the bargaining process involved in proffers." United States v. Farmer, 543 F.3d 363, 374 (7th Cir. 2008) (quotation omitted); see State v. Earle, 145 Vt. 650, 653, 497 A.2d 28, 29 (1985) (stating same rule for plea agreements). For this reason, if the agreement is ambiguous, it must be strictly construed against its drafter, the State. State v Murray, 159 Vt. 198, 205, 617 A.2d 135, 139 (1992). However, disputes regarding the terms of a proffer agreement must "be resolved by objective standards." State v. Byrne, 149 Vt. 224, 226, 542 A.2d 276, 277 (1988) (quotation omitted). "The parties are entitled to rely upon the express terms of the agreement." State v. Johnstone, 2013 VT 57, ¶ 11, 194 Vt. 230, 75 A.3d 642. Therefore, when the language of a contract is clear, it shall be interpreted as written. Scott v. State, 2021 VT 39, ¶ 12, __ Vt. __, 256 A.3d 105. The meaning of the proffer agreement is a question of law reviewed de novo. Melvin, 730 F.3d at 37.

¶ 17. We begin by looking at the text of the written proffer agreement. City of Newport v. Vill. of Derby Ctr., 2014 VT 108, ¶ 10, 197 Vt. 560, 109 A.3d 412. Nowhere in the written proffer agreement is confidentiality or a limitation on disclosure expressly mentioned. The written proffer agreement prohibits the State from using the information defendant provides "directly against him in any criminal prosecution," subject to certain delineated exceptions that the parties

9

do not contend have been triggered here. However, the proffer agreement also expressly states that the State may use "any leads or information derived from" the proffer session against defendant in any future criminal proceeding. When we read these two provisions together, as we must, they complement each other to set the boundaries of the government's use of the proffer. See Constr. Drilling, Inc. v. Engineers Constr., Inc., 2020 VT 38, ¶ 14, 212 Vt. 323, 236 A.3d 193 (explaining that "agreement must be viewed in its entirety, with an eye toward giving effect to all material parts in order to form a harmonious whole" (quotation omitted)). While direct use of the proffer, described in the first clause, is prohibited, derivative use, described in the second clause, is allowed.

¶ 18. Having drawn this line, the question becomes whether disclosure of the contents of the proffer to another, such as Ms. Auclair, is a direct use against defendant in a criminal prosecution and therefore prohibited. It is not. The principle is well-explained in a comparable federal case, United States v. Piegalo, 135 F.3d 703 (11th Cir. 1998). In Piegalo, defendant signed a similar proffer agreement to the one in this case. The court concluded, as we have here, that the agreement prohibited the government from using the statements and information making up the proffer against the defendant but allowed the government to use evidence derived from the defendant's proffer statements against her. Id. at 710-11. The government took the defendant's proffer statements and used them to indict someone else. That person then decided to cooperate with the government, plead guilty, and testify against the defendant. The court concluded that this was a prime example of derivative evidence, contrasting it with direct use, such as introducing the defendant's statements into evidence to use against her. Id. The reasoning of that case is sound and supports our conclusion that sharing information with potential codefendants alone is not direct use against defendant in a criminal prosecution.

¶ 19. Defendant's interpretations to the contrary stray from the text of the agreement and are unpersuasive. First, defendant contends that the written agreement only allows use of the

10

information he provided against him if one of three exceptions to the agreement apply and therefore disclosure is a prohibited use. This reading summarily ignores that the written proffer agreement does not prohibit any "use" of the information but instead prohibits its "use . . . directly against [defendant] in any criminal prosecution" and allows use of derivative evidence against him in any future proceeding.

¶ 20. Defendant also argues that the proffer agreement prohibits disclosure because the State cannot circumvent the proffer agreement by disclosing the proffer to Ms. Auclair so that she may use the proffer directly against defendant at a joint trial in the State's place. That is not the situation here. Defendant and Ms. Auclair are not currently codefendants in a joint trial; any ruling on how Ms. Auclair could hypothetically use information the State obtained during the proffer session against defendant in a joint proceeding would therefore be advisory. See State v. Nash, 144 Vt. 427, 435, 479 A.2d 757, 761 (1984) ("Under the Vermont Constitution this Court is not authorized to render advisory opinions."). Further, this argument is essentially a reiteration of defendant's proposal that any result of the proffer sessions that would be unfavorable to him, such as Ms. Auclair's hypothetical decision to alter her litigation strategy in a hypothetical joint trial, is a "use" against him and therefore breaches the agreement. As we explained above, that is not the agreement defendant signed.

¶ 21. Extrinsic evidence will not sway us to the contrary. Defendant proposes that, to the extent the written proffer agreement is ambiguous, the discussions regarding keeping the proffer confidential "at this time" at the proffer session make it clear that the proffer agreement prohibits disclosure. See Murray, 159 Vt. at 205, 617 A.2d at 139 (explaining that ambiguous agreements are strictly construed against State). Nothing in the written agreement can be reasonably read as requiring confidentiality, and in fact doing so would contravene the agreement's express grant to the State of the ability to investigate defendant's statements, which may include sharing the contents of the proffer with others to corroborate defendant's story. Defendant may not rely on

extrinsic evidence to manufacture ambiguity where there is none. See Kipp v. Chips Est., 169 Vt. 102, 107, 732 A.2d 127, 131 (1999) (explaining extrinsic evidence cannot "vary the terms of an unambiguous writing"). Because the terms of the written proffer agreement unambiguously fail to provide any provision prohibiting public disclosure of the contents of the proffer session, there is no ambiguity to construe in defendant's favor. See Johnstone, 2013 VT 57, ¶ 11 ("The parties are entitled to reply upon the express terms of the agreement."); United States v. Fentress, 792 F.2d 461, 464–65 (4th Cir. 1986) ("While the government must be held to the promises it made, it will not be bound to those it did not make. To do otherwise is to strip the bargaining process itself of meaning and content.").

¶ 22.    We thus conclude that the plain language of the written proffer agreement is unambiguous and does not prohibit disclosure of the contents of the proffer.[4] Because the proffer agreement as a matter of law does not prohibit disclosure, we conclude defendant is not entitled to a protective order on this basis and therefore no question remains to remand to the criminal division. Puppolo v. Donovan & O'Connor, LLC, 2011 VT 119, ¶ 15, 191 Vt. 535, 35 A.3d 166 (2011) ("We will not disturb a discretionary ruling unless it is shown that such discretion was

---

[4] It is unclear from defendant's briefing whether, in addition to using the "at this time" discussions to interpret the written proffer agreement, he asserts there was a prior, contemporaneous, or subsequent promise of confidentiality that must be enforced. To the extent defendant wishes to raise any of these issues, we find the briefing inadequate for the Court to properly discern and address them. See State v. Taylor, 145 Vt. 437, 439, 491 A.2d 1034, 1035 (1985) (explaining that proper presentation of issues raised on appeal rests with appellant and we will not construct arguments for parties). These arguments were also not raised below and are therefore not preserved for appeal. See Progressive Ins. Co. v. Brown, 2008 VT 103, ¶ 6, 184 Vt. 388, 966 A.2d 666 (stating that in order to properly preserve argument, appellant must present it to trial court "with specificity and clarity" (quotation omitted)). Whatever the implication of these statements may be, attempting to answer questions without proper presentation or preservation would require the Court to speculate on appeal, which we will not do. See Richardson v. Sanborn, 33 Vt. 75, 76 (1860) ("It is useless to speculate, in regard to any other questions, which might, or might not, arise upon the evidence, as we can only revise such questions as were there raised and decided . . . ."); State v. Wool, 162 Vt. 342, 346, 648 A.2d 655, 658 (1994) (explaining that preservation rule provides trial court with opportunity to address error and "facilitates the development of a record for appeal").

12

abused or entirely withheld, and the abuse of discretion resulted in prejudice to [a party's] substantial rights." (quotation omitted)).

¶ 23.    We now turn to defendant's argument that a protective order is required to protect his and his wife's safety.  It is self-evident that if defendant can establish that a credible safety risk to him or his wife exists, that would be a "clearly defined and serious injury." Wecht, 484 F.3d at 211 (quotation omitted); see Owens, 843 F. App'x at 679-80 (noting that "reasons abound to keep proffer agreements confidential, including . . . a defendant's interest in protecting himself from retaliation if others learn of his actions").  Further, the notes accompanying Rule 16.2(d) anticipate that a protective order may issue where disclosure would result in intimidation or harm.  Reporter's Notes, V.R.Cr.P. 16.2 (stating that cause is shown where disclosure would result in intimidation or harm to witnesses).  Federal courts also agree that "among the considerations to be taken into account by the court will be the safety of witnesses and others." United States v. Cordova, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (emphasis added) (quotation omitted).  Accordingly, potential danger to a defendant or a witness, like defendant's wife, is an acceptable ground to show cause for a protective order.

¶ 24.    Unlike the proffer agreement argument resolved above, the criminal division's failure to address defendant's danger argument raises factual questions that cannot be addressed on appeal in the first instance.  When the criminal division concluded without further comment that none of defendant's arguments merited a protective order, it failed to exercise its discretion with respect to this issue.  See State v. Anderson, 2016 VT 127, ¶ 13, 204 Vt. 17, 162 A.3d 1249 (explaining that to exercise discretion, trial court "must consider all the relevant facts").  Because the court "withheld its discretion entirely" when it did not consider defendant's argument that disclosure would put him and his wife at risk, it abused its discretion. State v. Mottolese, 2015 VT 81, ¶ 6, 199 Vt. 470, 124 A.3d 809.  Without a record developing findings regarding the potential danger to defendant and his wife, we are unable to determine whether defendant is

13

prejudiced by the criminal division's order. Accordingly, we remand for the trial court to consider this argument in the first instance using the proper legal standard provided above. See State v. Shaw, 149 Vt. 275, 284, 542 A.2d 1106, 1111 (1987) (remanding issue where we were unable to determine whether error prejudiced defendant).

¶ 25. In summary, the trial court should have considered both of defendant's arguments for a protective order that were properly raised in this interlocutory appeal. However, as a matter of law, the proffer agreement does not prohibit disclosure, and we therefore conclude under our de novo review that defendant is not entitled to a protective order on this basis. On the other hand, the trial court never exercised its discretion regarding the potential danger disclosure poses to defendant and his wife and therefore did not make adequate findings on defendant's allegations. Because the safety concern raises factual questions, we are unable to conclusively address this issue on appeal. Accordingly, we remand for the trial court to consider the potential danger to defendant and his wife in the first instance.

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice

14